## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, | CASE NO. 8:13CV84 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| COLONY NATIONAL INSURANCE COMPANY;  DEANGELO BROTHERS, INC.; and  AMERICAN HOME ASSURANCE COMPANY, | |
| Defendants. | |

This matter is before the Court on the Motion to Dismiss (Filing No. 12) filed by Defendant Colony National Insurance Company ("Colony"), and the Motion to Stay, Dismiss or Transfer (Filing No. 15) filed by Defendant American Home Assurance Company ("AHA").  For the reasons stated below, the Motions will be granted to the extent they seek a stay of this action.

## BACKGROUND

In 2005, Plaintiff Union Pacific Railroad Company ("UP") entered into an agreement (the "Agreement") with Defendant DeAngelo Brothers, Inc. ("DBI"), under which DBI agreed to maintain the vegetation at UP's railroad crossings.  The Agreement contains a "GENERAL INDEMNITY" provision, which states:

> [DBI] shall indemnify and hold harmless [UP] . . . against and from any and all liability . . . arising from or growing out of any injury to or death of any person . . . .  The right to indemnity shall accrue when such injury [or] death . . . is associated with [DBI]'s Work performed under this Agreement . . . or any activity or omission arising out of performance or nonperformance of this Agreement.  However, [DBI] shall not indemnify [UP] for any portion of the loss caused by [UP].

(Filing No. 14-1 at CM/ECF p. 18 § 13.)   Under the Agreement, DBI was to obtain insurance for itself and for UP as an additional insured.  The Agreement stated that the insurance was to be "with respect to liabilities arising out of [DBI]'s performance of Work on behalf of [UP] to the extent of the indemnity provisions herein."  (*Id.* at CM/ECF p. 14 § 4.)   The Agreement also contains a choice-of-law provision and a forum-selection clause.  (*Id.* at CM/ECF p. 16 § 6.)  The choice-of-law provision states: "This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Nebraska."   (*Id.*)   The forum-selection clause states: "Litigation arising out of or connected with this Agreement may be instituted and maintained in the courts of the State of Nebraska[.]"  (*Id.*).

DBI obtained two insurance policies, one from AHA (the "AHA Policy") and one from Colony (the "Colony Policy").  AHA was DBI's primary insurer.  Colony was DBI's excess insurer.   The AHA Policy provided additional insured coverage for "**ANY RAILROAD** . . . but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [DBI's] acts or omissions[.]"  (Filing No. 17-15 at CM/ECF p. 65.)  The AHA Policy also states that AHA "shall have no duty to defend any additional insured, but, as a condition precedent to obtaining coverage under th[e] [AHA Policy], the additional insured shall cooperate fully with [AHA] and permit [AHA] to associate in the defense of any claim."  (*Id.*)  The Colony Policy states:

> Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance.
>
> If coverage provided to an additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of the insurance required by the contract, less any amounts payable by any "underlying insurance."

> Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

(Filing No. 14-1 at CM/ECF p. 141.)

In May 2006, while the Agreement, the AHA Policy, and the Colony Policy were in force, a UP train collided with an automobile at a railroad crossing in Oklahoma. The passengers of the automobile sustained injuries, and ultimately died, as a result of the collision. The personal representative of one of the occupants of the automobile sued UP in an Oklahoma state court (the "Oklahoma Action"), alleging that UP engaged in eleven negligent acts or omissions, one of which was that UP "failed to clear its crossing and right-of way or property of brush, trees, other vegetation, debris and other visual obstructions and visual clutter which interfered with motorists' views of approaching trains." (*Id.* at CM/ECF pp. 8-9 ¶ 9.) The parties seem to agree that this is the only allegation that implicates the Agreement.

In a letter dated December 31, 2012, sent to Colony, UP demanded that Colony pay the limits under the Colony Policy to allow UP to settle the Oklahoma Action. (*Id.* at CM/ECF p. 160; Filing No. 28-1 at CM/ECF pp. 21-22.) UP stated in the letter: "We believe at this point that settlement can be had, which is why [UP] is willing to discuss and clarify coverage issues in order to avoid any potential allegations in the future of bad faith or failure to reasonably settle [the Oklahoma Action]." (Filing No. 28-1 at CM/ECF p. 22.)

In a letter dated January 10, 2013, Colony responded to UP's demand, requesting access to UP's defense file for the Oklahoma Action so that it could independently assess to what extent UP's liability exposure resulted from DBI's

3

activities and not UP's.  (*See* Filing No. 14-1 at CM/ECF pp. 163-65; Filing No. 28-1 at CM/ECF pp. 26-28.)  While UP granted Colony access to certain files, UP denied Colony unrestricted access to its defense files for fear of waiving attorney/client and work product privileges.  (Filing No. 14-1 at CM/ECF p. 168.)

On January 15, 2013, UP's counsel sent an email to Colony's counsel, representing that UP had an opportunity to settle the Oklahoma Action.  UP's counsel requested that Colony advise if it would consent to UP's decision to enter into a written settlement agreement.  (*Id.* at CM/ECF pp. 170-71.)  Colony advised that it would neither object nor consent to UP settling the Oklahoma Action because it did not know all of the terms of the settlement and because it had been unable to assess UP's liability exposure with its limited access to UP's defense files.  (*Id.* at CM/ECF p. 170.)  Sometime in early 2013, UP settled the Oklahoma Action for a confidential amount that exceeded the coverage provided in both the AHA Policy and the Colony Policy.

Between January 16, 2013, and February 3, 2013, UP and Colony negotiated what materials from UP's defense file that UP would provide to Colony.  (Filing No. 28-1 at CM/ECF pp. 31-33.)

On February 14, 2013, Colony filed a declaratory judgment action in the United States District Court for the Middle District of Pennsylvania, Case No. 3:13-cv-401-RDM (the "Pennsylvania Action"), naming DBI and UP as defendants, and seeking a determination of the parties' rights, duties, and obligations under the Colony Policy with respect to the settlement of the Oklahoma Action.  (Filing No. 29-1 at CM/ECF pp. 2-20.)

4

On February 19, 2013, UP sent Colony a hard drive onto which UP had downloaded certain materials from its defense files.  (Filing No. 28-1 at CM/ECF p. 38.) On February 20, 2013, Colony sent UP a letter advising UP of the Pennsylvania Action, confirming that Colony had received the hard drive from UP, and representing that, in light of filing the Pennsylvania Action, Colony did not open, access, or review any of the information on the hard drive and was returning it to UP.  (*Id.* at CM/ECF pp. 41-42.)

On March 13, 2013, UP filed the present action (the "Nebraska Action"), asserting causes of action against DBI for contractual indemnity and/or contribution; against AHA, seeking a declaration of rights and obligations under the AHA Policy; against Colony, seeking a declaration of rights and obligations under the Colony Policy; and against both AHA and Colony for breach of contract, breach of fiduciary duty, breach of statutory duty, and bad faith failure to indemnify UP.  (Filing No. 1.)  UP also asserts a right to attorney fees pursuant to Neb. Rev. Stat. § 44-359.

On March 19, 2013, DBI filed a motion in the Pennsylvania Action seeking to be dismissed as a party to that action.  (Filing No. 28-3 at CM/ECF pp. 2-5.)  On April 5, 2013, AHA filed a motion to intervene in the Pennsylvania action (Filing No. 17-5 at CM/ECF p. 3), seeking a determination of the parties' rights, duties, and obligations under the AHA Policy with respect to the settlement of the Oklahoma Action.  (Filing No. 17-6 at CM/ECF pp. 2-11.)  That same day, Colony and AHA filed the present Motions in the Nebraska Action, contending that priority should be given to the Pennsylvania Action with respect to the parties' dispute because it is the first-filed action.  (Filing Nos. 12, 13, 15, 16.)  Colony noted that, relevant to the question of which action should be deemed the first-filed action, it did not anticipate UP would challenge jurisdiction in the

5

Pennsylvania Action, pointing to instances in which UP had previously defended itself in Pennsylvania courts. (Filing No. 13 at CM/ECF p. 12; Filing No. 14-1 at CM/ECF pp. 211-231.)

On April 19, 2013, UP filed a motion in the Pennsylvania Action seeking to be dismissed from the action on the basis that it is not subject to personal jurisdiction in Pennsylvania. (Filing No. 31-1 at CM/ECF p. 2.) AHA's motion to intervene, DBI's motion to be dismissed as an unnecessary party, and UP's motion to dismiss for lack of personal jurisdiction remain pending in the Pennsylvania Action. A case management conference, however, was held in the Pennsylvania Action on June 6, 2013. (*See* Filing No. 37-2.)[1]

## DISCUSSION

Colony and AHA[2] bring their Motions primarily pursuant to the "first-filed" rule.[3] They assert that, pursuant to the first-filed rule, the Nebraska Action should be

---

[1] The Court has verified through the PACER Service Center, http://pacer.psc.uscourts.gov, that these motions are fully briefed, and that the court in the Pennsylvania Action held the case management conference despite UP's request to postpone it until after the disposition of AHA's, DBI's, and UP's motions. (See *Colony Nat'l Ins. Co. v. DeAngelo Bros., Inc. et al.*, Case No. 3:13-cv-401-RDM (M.D. Pa. Feb. 14, 2013).

[2] UP asserts that "it is questionable whether AHA has standing to invoke the first-filed rule in the same manner as Colony" because "AHA is currently not a party to the action pending in Pennsylvania." (Pl.'s Br., Filing No. 27 at CM/ECF p. 3.) Even if AHA may not invoke the first-filed filed rule because it has not yet been made a party to the Pennsylvania Action, there is no dispute that Colony may invoke the first-filed rule. As will be explained below, the Court finds that the interests of justice are best served if this action is stayed pending certain determinations to be made by the court in the Pennsylvania Action.

[3] In addition to seeking to stay, dismiss, or transfer the Nebraska Action pursuant to the first-filed rule, AHA also seeks the dismissal of the Nebraska Action on an alternative basis. AHA contends that the claims UP has asserted in the Nebraska Action should be dismissed because they are not ripe. AHA asserts that UP's claims are not ripe because UP is not owed a duty of indemnification from AHA or Colony unless and until fault is allocated to DBI, and because UP never ceded its defense to AHA. It appears that UP's claims are ripe for review, *see Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC*, 620 F.3d 926, 934 (8th Cir. 2010); see also *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992), however, the Court will defer ruling on the ripeness issues AHA has

dismissed, or at least stayed pending the resolution of the jurisdictional challenge maintained in the Pennsylvania Action.[4]   The first-filed rule provides that, generally, "in a case of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" *Boatmen's First Nat. Bank of Kan. City v. Kan. Pub. Emps. Ret. Sys.*, 57 F.3d 638, 640 n.3 (8th Cir. 1995) (quoting *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir.1985)).  The Eighth Circuit has described the first-filed rule as a component of the doctrine of federal comity, which "permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Orthmann*, 765 F.2d at 121; *see also Rural Media Grp., Inc. v. Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1116 (D. Neb. 2010) (citing *Orthmann*, 765 F.2d at 121).   "The prevailing standard is that the first-filed rule should apply unless there are compelling circumstances suggesting otherwise."  *Schwendiman Partners, LLC v. Hurt*, 71 F. Supp. 2d 983, 987 (D. Neb. 1999) (citing *Nw. Airlines, Inc. v. Am. Airlines, Inc.,* 989 F.2d 1002, 1005 (8th Cir.1993)).

    This first-filed "rule"[5] "is not intended to be rigid, mechanical, or inflexible." *Orthmann*, 765 F.2d at 121.   Its purpose "is to promote efficient use of judicial

---

presented in its Motion because, as will be explained below, this action will be stayed pending certain rulings to be made in the Pennsylvania Action.

   [4] In its Motion, Colony only requests that the Nebraska Action be dismissed.  (See Filing No. 12.) In its reply brief, however, Colony requests that "[i]n the alternative, the Court should stay further proceedings in this matter pending a ruling by the Middle District Court on the jurisdictional issue."  (Filing No. 36 at CM/ECF p. 3.)  AHA presents the possibility that the Nebraska Action could be transferred to the Middle District of Pennsylvania pursuant to the first-filed rule.  (See Filing No. 15.)

   [5] The Eighth Circuit has stated that "'first-filed' is not a 'rule.'  It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions

resources," *id.*, and thus, it "is to be applied in a manner best serving the interests of justice." *Nw. Airlines*, 989 F.2d at 1005 (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir.1990)).

The Eighth Circuit has found that the presence of certain "red flags" indicate "compelling circumstances" may exist that suggest the first-filed rule should not apply in a given case.  These "red flags" are:

> (1) the first-filed suit was filed after the other party gave notice of its intention to sue; and (2) the first-filed suit is for declaratory judgment, rather than for damages or equitable relief, therefore suggesting a "race to the courthouse" in an attempt to preempt the natural plaintiff from his or her choice of forum.

*Schwendiman*, 71 F. Supp. 2d at 988 (quoting *Nw. Airlines*, 989 F.2d at 1007).  Other factors a court may consider in its "first-filed" analysis include "which lawsuit would further the interest of speedy adjudication (i.e., which suit has further progressed)," *id.* at 987-88; whether "disputes about personal jurisdiction . . . may have delayed the progress of the case in a particular district," *Rural Media*, 697 F. Supp. 2d at 1116 (citing *Orthmann*, 765 at 121); and whether "the natural plaintiff's choice of venue will be a more convenient forum than the venue chosen by the first-filer," *Hilliard v. Credit Suisse First Boston LLC*, No. 8:06CV285, 2006 WL 2239014, *3 (D. Neb. Aug. 3, 2006).

The parties agree that concurrent jurisdiction exists between the Pennsylvania Action and the Nebraska Action.  The parties disagree, however, with respect to which action, the Pennsylvania Action or the Nebraska Action, should be deemed the "first-filed," and with respect to whether compelling circumstances exist that indicate their dispute should proceed in one court instead of the other.  Essentially, Colony and AHA

---

should proceed to judgment."  *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir.1990)).

argue that the parties' dispute should proceed in the Pennsylvania Action, while UP believes their dispute should proceed here.  Colony and AHA argue that their dispute should be heard in the Pennsylvania Action because it was filed first and no "compelling circumstances" suggest the first-filed rule should be disregarded.  UP contends that the dispute should proceed in this Court because the Nebraska Action is actually the first-filed action, even though it was filed about a month after the Pennsylvania Action, because personal jurisdiction has been challenged in the Pennsylvania Action.  UP asserts, therefore, that jurisdiction has not yet attached in the Pennsylvania Action.  UP also argues that even if the Pennsylvania Action is deemed the first-filed action, the parties' dispute should proceed in this Court because both "red flags" are present, Nebraska is a more convenient and appropriate forum for the parties' dispute to be heard, and because the Pennsylvania Action has not progressed further than the Nebraska Action.

Having considered the matter, the Court finds that the interests of justice would be served best by staying the Nebraska Action pending the resolution of the motions UP (personal jurisdiction), AHA (intervention), and DBI (unnecessary party) have filed in the Pennsylvania Action.

It is undisputed that the Pennsylvania Action was initiated before the Nebraska Action.  Under the first-filed rule, however, "'[i]t is not the first case filed which has precedence, but the court first *obtaining jurisdiction* of the parties and the issues' which should proceed with the litigation.'"  *FirsTier Bank, N.A. v. G-2 Farms*, No. 4:CV95-3118, 1996 WL 539217, at *3 (D. Neb. Mar. 11, 1996) (alteration in original) (quoting *Jefferson Ward Stores, Inc. v. Doody Co.,* 560 F. Supp. 35, 37 (E.D. Pa. 1983)) (internal

quotation marks omitted). Relying primarily on this Court's decision in *Rural Media*, UP argues that jurisdiction has not yet "attached" in the Pennsylvania Action because it has challenged the court's assertion of personal jurisdiction in the Pennsylvania Action. UP's reliance on *Rural Media* is misplaced.

In *Rural Media*, the Court was confronted with a case involving concurrent jurisdiction between it and another federal court in Texas. The Texas action was filed on December 1, 2009, however, the complaint was amended on December 4, 2009. 697 F. Supp. 2d at 1102. The action that came before this Court was filed on December 2, 2009. *Id.* The defendant in the action before this Court filed a motion seeking dismissal for lack of personal jurisdiction, or in the alternative, to have the case transferred to Texas pursuant to the first-filed rule. *Id.* at 1102-03. The Court denied the defendant's personal jurisdiction challenge and concluded that the action before it should be transferred to Texas pursuant to the first-filed rule. *Id.* at 1112. The Court stated that "because [defendant] has disputed whether this Court has personal jurisdiction over it, and because the parties did not dispute the court's exercise of personal jurisdiction in . . . Texas, this Court concludes that the . . . Texas [court] is the 'first court in which jurisdiction attache[d].'" *Id.* at 1113 (quoting *Orthmann*, 765 F.2d at 121). The Court also found:

> There [we]re no compelling circumstances weighing against the application of the first-filed rule . . . . On the contrary, . . . it would be extraordinarily inconvenient to require the parties and witnesses to participate in parallel litigation in this Court and in the . . . Texas [court]. Likewise, allowing the litigation to proceed in both . . . Nebraska . . . and . . . Texas would represent an inefficient use of judicial resources. Moreover, given the possibility that differing or conflicting results might be reached in each case, allowing the Plaintiffs' action to proceed in this Court would be contrary to the interests of justice.

*Id.* at 1113. The plaintiff filed a motion for reconsideration. *Id.* at 1115.

10

On reconsideration, the Court clarified that it "referred to *Orthmann* for the proposition that when determining 'the first court in which jurisdiction attaches' for purposes of the first-filed rule, a court should take into account any disputes about personal jurisdiction that may have delayed the progress of the case in a particular district." *Id.* at 1116. The Court further explained that "[e]ven if this [Court] were to be considered . . . the one in which the action was 'first filed,' . . . the Court's conclusion that the case should be transferred to the . . . Texas [court] would remain the same, as a matter of comity and efficient use of judicial resources." *Id.* at 1116-17.

In *Rural Media*, the Court also addressed the plaintiff's concern that "a Defendant who does not like the Plaintiff's choice of forum can file a Motion to Dismiss on grounds of personal jurisdiction, file a Complaint in a forum of his own choosing, and then obtain the benefit of the first to file rule, circumventing the Plaintiff's choice of forum." *Id.* at 1117. The Court found that "[t]here [wa]s no indication that [defendant] . . . engaged in such gamesmanship" despite amending its complaint in Texas to add defendants, and denied the plaintiff's motion for reconsideration. *Id.* at 1117-18

Unlike the situation currently before the Court, in *Rural Media*, the personal jurisdiction challenge was made in the action initiated second in time. Thus, the personal jurisdiction challenge would not have affected whether jurisdiction "attached" in the first-filed Texas action. The jurisdictional challenge in the second-filed Nebraska action and the lack of a jurisdictional dispute in the first-filed Texas action were merely factors that supported deferring to the first-filed Texas action. Moreover, while there was no reason to conclude that the defendant in *Rural Media* engaged in gamesmanship for the purpose of frustrating the plaintiff's choice of forum, the

11

sequence of events here provide reason to believe UP may have contested jurisdiction in the Pennsylvania Action in an attempt to gain the benefit of the first-filed rule and frustrate Colony's choice of forum.  Colony filed the Pennsylvania Action about a month before UP filed the Nebraska Action; after UP initiated the Nebraska Action, Colony and AHA filed the present Motions, briefing the first-filed rule and the "attachment" issue; and about a month after Colony and AHA filed and briefed the present Motions, UP filed its motion challenging personal jurisdiction in the Pennsylvania Action and its briefs opposing the present Motions in the Nebraska Action.

Nevertheless, it is unclear at this time whether jurisdiction is proper in Pennsylvania.  Thus, under the present circumstances, even if the Nebraska Action were technically the first-filed action and no "compelling circumstances" called for ignoring the first-filed rule, allowing the Nebraska Action to proceed would not necessarily serve the interests of justice.  If the Pennsylvania court were to deny UP's motion to dismiss for lack of personal jurisdiction, the parties' dispute would proceed in both Nebraska and Pennsylvania.

Similarly, assuming the Pennsylvania Action is the first-filed action, neither of the "red flags," nor any of the "other factors" a court considers in its first-filed analysis, suggests that the interests of justice would be served best by denying AHA's and Colony's Motions and allowing the Nebraska Action to move forward at this time.  With respect to the first "red flag," the only correspondence UP contends provided Colony with UP's intent to sue is the letter it sent to Colony on December 31, 2012.  While this letter may have indicated UP would consider filing suit against Colony in the future, it "gave no indication that a lawsuit was imminent[.]"  *Nw. Airlines*, 989 F.2d at 1007.

12

Instead, it invited Colony to discuss coverage issues to avoid potential future allegations of bad faith or failure to reasonably settle.  Furthermore, UP waited three months after sending this notice and learning of Colony's position on the extent of UP's coverage under the Colony Policy and receiving Colony's request for full access to UP's defense file, and a month after Colony filed the Pennsylvania Action, to file the Nebraska Action.  Thus, it appears likely that Colony did not file the Pennsylvania Action for fear that UP would beat it to the courthouse; UP may not have even contemplated filing the Nebraska Action until after Colony filed the Pennsylvania Action.  *See Course in Miracles v. Found. for "A Course in Miracles," Inc.*, No. 8:00CV211, 2000 WL 33223394, *2 (D. Neb. May 17, 2000) (citing *Nw. Airlines*, 989 F.2d at 1007); *see also Nw. Airlines*, 989 F.2d at 1007 (finding that the first "red flag" did not indicate "compelling circumstances," based, in part, on second-filer's delay in bringing suit for several weeks after first-filer brought its declaratory judgment action).

With respect to the second "red flag," while Colony seeks only declaratory relief in the Pennsylvania Action, "[c]ourts have consistently allowed insurers to sue insureds—prior to resolution of the underlying action—in order to obtain a declaration of coverage," *Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp., Inc.*, No. 8:05CV315, 2007 WL 1290138, at *6 (D. Neb. Mar. 12, 2007), and "[t]he basic nature of th[is] coverage action necessitates that the relief sought . . . in the [Pennsylvania] Action be in the form of a declaratory judgment," *Colony Nat. Ins., Co. v. UHS Children Servs., Inc.*, No. CIV.A. 09-2916, 2009 WL 3007334, at *3 (E.D. Pa. Sept. 11, 2009).  The same question presented by Colony's claim for declaratory relief, *i.e.,* to what extent UP's liability exposure in the Oklahoma Action resulted from DBI's actions or omissions,

13

appears to be a key issue in the Nebraska Action.  Colony and AHA in the Pennsylvania Action and UP in the Nebraska Action seek declaratory relief with respect to that question, which was not resolved in the underlying Oklahoma Action.  (*See* UP Compl., Filing No. 1 at ¶¶ 18-20, 23-24, 28; Colony Compl., Filing No. 29-1 at ¶¶ 45-46, 58-62.) Even though UP may assert non-declaratory claims and seek damages in addition to asserting a claim seeking declaratory relief in the Nebraska Action while Colony only seeks declaratory relief in the Pennsylvania Action, UP's non-declaratory claims appear to be closely related to and bound up with the declaratory relief it seeks.  Under these circumstances, the Court does not believe that the fact the Pennsylvania Action is a declaratory judgment action is a "compelling circumstance" weighing in favor of the parties' dispute proceeding in the Nebraska Action instead of the Pennsylvania Action.

Nebraska may be a more convenient forum for UP because UP is located in Nebraska.  Both the Nebraska Action and the Pennsylvania Action, however, involve insurance contracts issued to DBI, a Pennsylvania resident.  As previously noted, the parties' dispute seems to turn on whether and to what extent DBI's actions or omissions gave rise to UP's liability exposure in the Oklahoma Action.  Thus, it is reasonable to believe Pennsylvania would be a more convenient forum for many key witnesses in this case.  Therefore, this convenience "factor" does not seem to weigh heavily in favor of the parties' dispute proceeding in one forum over the other.[6]

---

[6] In addition to asserting that Nebraska is a more convenient forum than Pennsylvania, UP also asserts that Nebraska is a more appropriate forum because Nebraska has an interest in protecting its citizens in insurance actions.  UP points to Nebraska's Unfair Insurance Claims Settlement Practices Act ("UICSPA"), Neb. Rev. Stat. §44-1536 et seq., to support this proposition, noting that the UICSPA's stated purpose "is to set forth standards for the investigation and disposition of claims arising under policies issued to residents of [Nebraska]."  Neb. Rev. Stat. § 44-1537.  UP's argument is unpersuasive. Neither the AHA Policy nor the Colony Policy was issued to a Nebraska resident, and neither policy specifically references Nebraska or UP as an additional insured.  (See Filing No. 17-15 at CM/ECF p. 65;

Although UP has disputed personal jurisdiction in the Pennsylvania Action, it does not appear that this challenge has delayed the progress of the action.  Rather, it appears that a case management conference has been held and an order issued in the Pennsylvania Action and, therefore, the Pennsylvania Action has progressed further than the Nebraska Action despite UP's personal jurisdiction challenge.[7]

Having considered the "red flags" and "other factors" a court may consider in its first-filed analysis, the Court finds that the present circumstances do not suggest that the interests of justice would be better served if this Court were to maintain priority over resolving the parties' dispute.  Of course, how the Pennsylvania court resolves the motions UP, AHA, and DBI filed in the Pennsylvania Action may lead this Court to believe otherwise.  The Court finds, therefore,  that at this time the interests of justice would be served best by staying the Nebraska Action pending the resolution of the motions UP (personal jurisdiction), AHA (intervention), and DBI (unnecessary party) have filed in the Pennsylvania Action.  *See FirsTier Bank*, 1996 WL 539217, at *2 (citing *Selph v. Nelson, Reabe and Snyder, Inc.,* 966 F.2d 411, 413 (8th Cir. 1992)).

## CONCLUSION

It is undisputed that the Pennsylvania Action was filed first, and nothing at this time indicates that the interests of justice would be best served if the parties' dispute

---

Filing No. 14-1 at CM/ECF p. 141.).   The named insured in both policies was DBI, a resident of Pennsylvania.

[7] *See Colony Nat. Ins.*, 2009 WL 3007334, at *2:

[T]he [first-filed action] and the current suit were filed only 14 days apart and are both still in the pleadings phase.  Moreover, the [first-filed action] has progressed further in that an initial case management order has been entered.  Thus, there is no justification to depart from the first-filed rule on the basis that this proceeding has advanced further in comparison to the [first-filed action].

15

were allowed to proceed in the Nebraska Action. How the motions pending in the Pennsylvania Action are resolved, however, may cause the interests of justice to weigh in favor of the parties' dispute proceeding in the Nebraska Action. Therefore, this action will be stayed pending the resolution of the motions UP (personal jurisdiction), AHA (intervention), and DBI (unnecessary party) have filed in the Pennsylvania Action. Accordingly,

IT IS ORDERED that The Motion to Dismiss (Filing No. 12) filed by Defendant Colony National Insurance Company, and the Motion to Stay, Dismiss or Transfer (Filing No. 15) filed by Defendant American Home Assurance Company, are granted as follows:

1.   The Court will stay all further proceedings in this matter pending the Middle District of Pennsylvania's decisions on Union Pacific's motion to dismiss for lack of personal jurisdiction, American Home Assurance Company's motion to intervene, and DeAngelo Brother, Inc.'s motion to be dismissed as a party. *See Colony Nat'l Ins. Co. v. DeAngelo Bros., Inc. et al.*, Case No. 3:13-cv-401-RDM, Filing Nos. 7, 11, 15 (M.D. Pa. Feb. 14, 2013); and

2.   Each time the Middle District of Pennsylvania issues a decision with respect to any of these three motions, the parties must notify this Court of the Middle District of Pennsylvania's decision by filing a notice with this Court within seven days of the date of the decision.

Dated this 12th day of July, 2013.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge

16