IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>COLONY NATIONAL INSURANCE COMPANY; DEANGELO BROTHERS, INC.; and AMERICAN HOME ASSURANCE COMPANY,<br><br>Defendants. | CASE NO. 8:13CV84<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Cross-Motions for Partial Summary Judgment submitted by Plaintiff Union Pacific Railroad Company ("UP") (Filing No. 104), Defendant Colony National Insurance Company ("Colony") (Filing No. 100), Defendant American Home Assurance Company ("AHA") (Filing No. 103), and Defendant DeAngelo Brothers, Inc. ("DBI") (Filing No. 109).

UP, Colony, and AHA seek a ruling on the scope of additional-insured coverage available to UP in connection with its settlement of claims resulting from a 2006 collision at a railroad crossing in Oklahoma. DBI supports the positions of Colony and AHA regarding the proper interpretation of a 2005 agreement (the "2005 Agreement") between UP and DBI, but takes a neutral position regarding the scope of additional-insured coverage available to UP.

For the reasons discussed below, UP's Motion will be denied; AHA's Motion and DBI's Motion will be granted; and Colony's Motion will be granted in part. The Defendants' liability to UP under the additional-insured coverage will be limited by the scope of the indemnity clause in the 2005 Agreement. UP will have the burden of

proving by a preponderance of the evidence any liability it incurred as a result of the 2006 collision that UP would not have incurred *but for* the acts or omissions of DBI, arising out of DBI's performance or nonperformance of the 2005 Agreement. If UP meets that burden, AHA and Colony will have the burden of proving by a preponderance of the evidence any portion of such liability caused by UP itself; and AHA and Colony will not be responsible for that portion of such liability.

## FACTUAL AND PROCEDURAL HISTORY

On or about January 1, 2005, UP and DBI entered into the 2005 Agreement, through which DBI agreed to maintain the vegetation at UP's railroad crossings. The 2005 Agreement contains a "GENERAL INDEMNITY" provision, which states:

> [DBI] shall indemnify and hold harmless [UP] . . . against and from any and all liability . . . arising from or growing out of any injury to or death of any person . . . . The right to indemnity shall accrue when such injury [or] death . . . is associated with [DBI]'s Work performed under this Agreement . . . or any activity or omission arising out of performance or nonperformance of this Agreement. However, [DBI] shall not indemnify [UP] for any portion of the loss caused by [UP].

(Filing No. 14-1 at ECF 18 § 13.) Under the 2005 Agreement, DBI was to obtain insurance for itself and for UP as an additional insured. The 2005 Agreement states that the insurance was to be "with respect to liabilities arising out of [DBI]'s performance of Work on behalf of [UP] to the extent of the indemnity provisions herein." (*Id.* at ECF 14 § 4.) The 2005 Agreement also contains a choice-of-law provision and a forum-selection clause. (*Id.* at ECF 16 § 6.) The choice-of-law provision states: "This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Nebraska." (*Id.*) The forum-selection clause states: "Litigation arising out

2

of or connected with this Agreement may be instituted and maintained in the courts of the State of Nebraska . . . ." (*Id.*)

DBI obtained two insurance policies, one from AHA (the "AHA Policy") and one from Colony (the "Colony Policy"). AHA was DBI's primary insurer. Colony was DBI's excess insurer. The AHA Policy provides additional insured coverage for "**ANY RAILROAD** . . . but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [DBI's] acts or omissions; or . . . [t]he act or omissions of those acting on [DBI's] behalf . . . ." (Filing No. 102-2 at ECF 65.) The AHA Policy also states that AHA "shall have no duty to defend any additional insured, but, as a condition precedent to obtaining coverage under th[e] [AHA Policy], the additional insured shall cooperate fully with [AHA] and permit [AHA] to associate in the defense of any claim." (*Id.*) The additional-insured endorsement in the AHA Policy provides that "this insurance shall not provide any coverage to any additional insured that is broader than that required in [DBI's] written contract with the additional insured." (*Id.* at ECF 66.) The Colony Policy states:

> Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance.
>
> If coverage provided to an additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of the insurance required by the contract, less any amounts payable by any "underlying insurance."
> Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

(Filing No. 102-3 at ECF 28.)

In May 2006, while the 2005 Agreement, the AHA Policy, and the Colony Policy were in force, a UP train collided with an automobile at a railroad crossing in Oklahoma.

3

The passengers of the automobile sustained injuries, and some ultimately died, as a result of the collision. The personal representative of one of the occupants of the automobile sued UP in an Oklahoma state court (the "Oklahoma Action"), alleging that UP engaged in eleven negligent acts or omissions, one of which was that UP "failed to clear its crossing and right-of way or property of brush, trees, other vegetation, debris and other visual obstructions and visual clutter which interfered with motorists' views of approaching trains." (Filing No. 102-4 at ECF 3–4 ¶ 9.)

On January 15, 2013, UP's counsel sent an email to Colony's counsel, representing that UP had an opportunity to settle the Oklahoma Action. UP's counsel requested that Colony advise if it would consent to UP's decision to enter into a written settlement agreement. (Filing No. 102-23. at ECF 3.) Colony advised that it would neither object nor consent to UP settling the Oklahoma Action because it did not know all the terms of the settlement and because it had been unable to assess UP's liability exposure with its limited access to UP's defense files. (*Id.* at ECF 2–3.) On January 23, 2013, UP settled the Oklahoma Action for a confidential amount that exceeded the coverage provided in both the AHA Policy and the Colony Policy. (Filing No. 108-1 at ECF 4–41.)

On February 14, 2013, Colony filed a declaratory judgment action in the United States District Court for the Middle District of Pennsylvania, Case No. 3:13-cv-401-RDM (the "Pennsylvania Action"), naming DBI and UP as defendants, and seeking a determination of the parties' rights, duties, and obligations under the Colony Policy with respect to the settlement of the Oklahoma Action. (Filing No. 29-1 at ECF 2–20.)

On March 13, 2013, UP filed the present action, asserting causes of action against DBI for contractual indemnity and/or contribution; against AHA, seeking a declaration of rights and obligations under the AHA Policy; against Colony, seeking a declaration of rights and obligations under the Colony Policy; and against both AHA and Colony for breach of contract, breach of fiduciary duty, breach of statutory duty, and bad faith failure to indemnify UP. (Filing No. 1.) UP also asserts a right to attorney fees pursuant to Neb. Rev. Stat. § 44-359.

On March 19, 2013, DBI filed a motion in the Pennsylvania Action seeking to be dismissed as a party to that action. (Filing No. 28-3 at ECF 2–5.) On April 5, 2013, AHA filed a motion to intervene in the Pennsylvania action (Filing No. 17-5 at ECF 3), seeking a determination of the parties' rights, duties, and obligations under the AHA Policy with respect to the settlement of the Oklahoma Action. (Filing No. 17-6 at ECF 2–11.) On April 19, 2013, UP filed a motion in the Pennsylvania Action seeking to be dismissed from the action on the basis that it is not subject to personal jurisdiction in Pennsylvania. (Filing No. 31-1 at ECF 2.)

On July 12, 2013, this Court issued a Memorandum and Order (Filing No. 38) staying further proceedings pending the resolution of the pending motions in the Pennsylvania Action. On January 28, 2015, the U.S. District Court for the Middle District of Pennsylvania granted UP's motion to dismiss, and declined jurisdiction to hear the remaining claims. (Status Report, Filing No. 48.)

Discovery in this action was stayed pending the parties' submission of Cross-Motions for Partial Summary Judgment regarding the scope of coverage available to UP as an additional insured under the AHA Policy and the Colony Policy. Colony submitted

5

a Motion (Filing No. 100), Briefs (Filing Nos. 101, 110, 118), and Evidence (Filing Nos. 102, 111) in support of its position; AHA submitted a Motion (Filing No. 103), Briefs (Filing Nos. 105, 114, 120), and Evidence (Filing Nos. 105, 106) in support of its position; DBI submitted a Motion (Filing No. 109), and Brief (Filing 119) joining in the arguments presented by Colony and AHA regarding the proper interpretation of the 2005 Agreement; and UP submitted a Motion (Filing No. 104), Briefs (Filing Nos. 107, 113, 121), and Evidence (Filing No. 108) in support of its position. The parties all requested oral argument, which was presented to the Court on April 21, 2016.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving

party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting Fed. R. Civ. P. 56(c)).

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial"

7

and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## DISCUSSION

### I. Choice of Law

Although the 2005 Agreement between UP and DBI contains a choice-of-law clause, applying Nebraska law, the AHA Policy and Colony Policy do not contain such a clause. Colony and AHA argue that the Policies should be interpreted pursuant to Pennsylvania law, because the Policies were brokered in Pennsylvania and delivered to DBI, the principal insured, at its Pennsylvania headquarters. Yet Colony and AHA also assert that there is no conflict between Nebraska law and Pennsylvania law regarding the matters at issue before the Court on the pending Motions, and a conflicts-of-law analysis is unnecessary. *See Leonards v. Southern Farm Bureau Cas. Ins. Co.,* 279 F.3d 611, 612 (8th Cir. 2002) (where relevant legal principles are the same in both states, a court need not resolve choice-of-law issues). UP also asserts that there is no true conflict of law necessitating any conflict-of-law analysis, but suggests the law of the forum state—Nebraska—should govern. UP argues *if* there is a conflict between the applicable law of Nebraska and Pennsylvania, then Nebraska law should apply to the interpretation of the Policies, because Nebraska is the principal location where the insured risk—UP—exists. (Plaintiff's Response Brief, Filing No. 113 at 7 (citing *Fireman's Fund v. Structural Sys. Tech. Inc.*, 426 F. Supp. 2d 1009, 1023 (D. Neb. 2006)).)

For reasons discussed below, the Court concludes that there is no conflict between the applicable law of Pennsylvania and Nebraska, and a conflicts-of-law analysis is unnecessary.

## II. Principles of Insurance Contract Construction

An insurance contract is to be construed as any other contract, to give effect to the parties' intentions at the time it was made. The terms should be given their plain and ordinary meaning as a reasonable person would understand them, and should be read to avoid ambiguities if the language permits. *Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co.,* 632 F.2d 1068, 1075 (3d Cir. 1980) (applying Pennsylvania law); *Finch v. Farmers Ins. Exch.*, 656 N.W.2d 262, 266–67 (Neb. 2003).

An ambiguous insurance policy will be construed in favor of the insured, but the fact that parties have different interpretations of the meaning of the language in a policy does not necessarily mean it is ambiguous. *Eastern Associated Coal Corp.*, 632 F.2d at 1075; *Guerrier v. Mid-Century Ins. Co.*, 663 N.W.2d 131, 135 (Neb. 2003).

The burden of proving the right to coverage under an insurance policy is on the insured. *McEwing v. Lititz Mut. Ins. Co.,* 77 A.3d 639, 646 (Pa. Super. Ct. 2013); *Pogge v. Am. Family Mut. Ins. Co.*, 723 N.W.2d 334, 341 (Neb. 2006).

The insurer has the burden of proving that an exclusion in the policy precludes coverage. *McEwing*, 77 A.3d at 646; *Fokken v. Steichen*, 744 N.W.2d 34, 41 (Neb. 2008).

## III. The Parties' Positions

Colony argues that additional-insured coverage available to UP under the AHA Policy and Colony Policy is limited by the scope of DBI's indemnity obligation to UP.

9

Colony also asserts that any additional-insured coverage is available to UP only to the extent that UP can establish that its liability was proximately caused by an act or omission of DBI. AHA simply argues that it does not owe additional-insured coverage to UP for any liability *caused by UP itself*.

UP contends that the AHA Policy and Colony Policy are independent of the 2005 Agreement and, therefore, the additional-insured coverages are not limited by the scope of DBI's indemnity obligation to UP. UP also argues that it need not demonstrate any fault on the part of DBI, or that any act or omission on the part of DBI had any causal connection whatsoever to the injuries giving rise to UP's liability. UP contends that the Policies' additional-insured coverages apply to UP's liability in the Oklahoma Action to the full extent of the limits of the Policies—even if UP's own negligence was the sole cause of the injuries—as long as the complaint in the Oklahoma Action alleged, *inter alia,* that UP failed to clear its crossing or right-of-way of brush, trees and vegetation, causing a visual obstruction. UP further argues that the AHA Policy and Colony Policy contain ambiguities, requiring the Court to interpret the Policies in UP's favor; and that the term "coverage" as used in the Policies is not synonymous with "indemnity," but instead refers to the nature of the risks addressed by the Policies.

IV. Analysis

The 2005 Agreement and the Policies are not ambiguous. The clear language of the documents demonstrates the parties' intention that the Defendants' liability be limited by the scope of the indemnity clause in the 2005 Agreement.

UP refers the Court to the opinion of the Nebraska Supreme Court in *Federated Service Ins. Co. v. Alliance Constr., LLC*, 805 N.W.2d 468 (Neb. 2011), and suggests

the opinion stands for the proposition that a policy providing additional-insured coverage is to be viewed independent of any contract between the primary insured and the additional insured, or at least independent of any *indemnity clause* in such a contract. UP also suggests that *Federated Service* stands for the proposition that an additional-insured endorsement provides direct primary coverage for the additional insured's own negligence, not merely indemnity for liability created by the acts or omissions of the primary insured.

*Federated Service* involved a construction contract that required the subcontractor to purchase specific insurance, make the contractor an additional insured, and make that insurance primary to any other insurance maintained by the contractor or project owner. A separate indemnity clause required the subcontractor to indemnify and hold the contractor harmless from liability even if the contractor's own active or passive negligence (but not the contractor's *sole* negligence) caused the loss. *Id.* at 472. When one of the subcontractor's workers was injured, allegedly due the contractor's negligence, the insurer denied coverage, noting that the policy's additional-insured endorsement said "[c]overage shall not exceed the terms and conditions that are required by the terms of the written agreement to add any insured, or to procure insurance." *Id.* at 475. The insurer argued that the construction contract did not require the subcontractor to *procure* insurance covering the contractor's own negligence, although the separate indemnification clause may have required the subcontractor to *indemnify* the contractor for such losses.

The Nebraska Supreme Court noted that it was a "typical practice" in construction contracts for a subcontractor to provide insurance and include the

11

contractor as an additional insured in order to cover losses caused by the contractor's own negligence in connection with the project, not merely losses caused by vicarious liability for the subcontractor's negligence. *Id.* at 477. The Nebraska Supreme Court concluded that the wording of the parties' agreement demonstrated their intent that the policy provide the contractor with insurance for claims arising out of the subcontractor's operations, even if the injury or damage was caused by the contractor's own negligence, and that the insurer's coverage of the contractor's negligence did not exceed the terms of the agreement. *Id.* The matter was then remanded to the district court to determine whether the "sole negligence" exclusion in the endorsement barred the contractor's recovery.

Here, the clause in the 2005 Agreement that requires DBI to obtain insurance and to include UP as an additional insured specifically cross-references the indemnification clause, and provides that such insurance is to be "with respect to liabilities arising out of [DBI]'s performance of Work on behalf of [UP] *to the extent of the indemnity provisions herein*." (Filing No. 14-1 at ECF 14 § 4 (emphasis added).)

The coverage UP seeks from AHA and Colony exceeds the terms of the 2005 Agreement and the terms of the Policies. The additional-insured endorsement in the AHA Policy provides that "this insurance shall not provide any coverage to any additional insured that is broader than that *required in [DBI's] written contract* with the additional insured." (Filing No. 102-2 at ECF 66 (emphasis added).) The additional-insured endorsement in the Colony Policy states:

> "If coverage provided to an additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of the insurance *required by the contract*, less any amounts

12

payable by any 'underlying insurance.' Additional insured coverage provided by this insurance *will not be broader than coverage provided by the 'underlying insurance'*."

(Filing No. 102-3 at ECF 28 (emphasis added).)

The 2005 Agreement, incorporated by reference in the Policies, also specifically provides that DBI will *not* indemnify UP for any portion of loss *caused by UP*. (Filing No. 14-1 at ECF 18 § 13.) Accordingly, the 2005 Agreement, incorporated by reference in the Policies, anticipates instances where there will be a need for allocation of liability and loss between UP and DBI.

Contrary to Colony's position, however, UP need not prove that DBI's acts or omissions were the proximate cause of the loss incurred by UP, in order for UP to make its claim as an additional insured. It is sufficient if UP proves by a preponderance of the evidence that its loss, or some portion of that loss, would not have been incurred *but for* DBI's performance or non-performance of its obligations under the 2005 Agreement. *See Federated Service*, 805 N.W.2d at 478. If UP meets that burden, it is then the Defendants' burden to demonstrate by a preponderance of the evidence that such loss, or some portion of it, was caused by UP. *Id.* at 479.

## CONCLUSION

For the reasons discussed above, the Court concludes that the Defendants' liability to UP is limited by the scope of the indemnity clause in the 2005 Agreement. Accordingly,

IT IS ORDERED

1. The Motion for Partial Summary Judgment (Filing No. 100) submitted by Defendant Colony National Insurance Co. is granted in part as follows:

    a. Defendants' liability to Plaintiff Union Pacific Railroad Company is limited by the scope of the indemnity clause in the 2005 Agreement between Plaintiff and Defendant DeAngelo Brothers, Inc.;

    b. And the Motion is otherwise denied;

2. The Motion for Partial Summary Judgment (Filing No. 103) submitted by Defendant American Home Assurance Company is granted;

3. The Motion for Partial Summary Judgment (Filing No. 104) submitted by Plaintiff Union Pacific Railroad Company is denied;

4. The stay of discovery (Filing No. 95) is lifted;

5. Magistrate Judge F.A. Gossett may issue a new order progressing the case; and

6. The Motion for Leave to File Clarification Re: Oral Argument (Filing No. 123) submitted by Colony National Insurance Company is denied as moot.

Dated this 26th day of April, 2016.

                                              BY THE COURT:

                                              s/Laurie Smith Camp
                                              Chief United States District Judge