# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **8:13CV84** |
| **COLONY NATIONAL INSURANCE COMPANY, DEANGELO BROTHERS INC., and AMERICAN HOME ASSURANCE COMPANY,** | ) ) ) ) ) | **ORDER** |
| **Defendants.** | ) ) | |

This matter is before the court on the Motion to Compel (Filing No. 90) filed by Defendant Colony National Insurance Company ("Colony").  Colony seeks an order compelling the plaintiff, Union Pacific Railroad Company ("Union Pacific"), to fully respond to interrogatories and produce documents withheld on the bases of attorney-client privilege and the work product doctrine.   The court will deny the motion.

## BACKGROUND

In 2005, Union Pacific hired Deangelo Brothers Inc., ("DBI") to provide vegetation control at Union Pacific's public railroad crossings.  The agreement ("2005 Agreement") between Union Pacific and DBI required DBI to indemnify Union Pacific for liability and loss arising out of any injury or death associated with DBI's work under the agreement.   The 2005 Agreement specified DBI "shall not indemnify [Union Pacific] for any portion of the loss caused by [Union Pacific]."   (Filing No. 14-1 at p. 18).   The 2005 Agreement required DBI to obtain insurance for itself and for Union Pacific as an additional insured.  DBI obtained an insurance policy from American Home Assurance Company ("AHA"), DBI's primary insurer, and an insurance policy from Colony, DBI's excess insurer.

In May 2006, while the 2005 Agreement and the above insurance policies were in effect,

1

a Union Pacific train collided with an automobile at a railroad crossing in Oklahoma, injuring two and killing three occupants of the automobile.   In May 2008, the personal representative of the one of the occupants of the automobile sued Union Pacific in Oklahoma state court ("the "Oklahoma Action").   The complaint alleged eleven negligent acts or omissions by Union Pacific, including one allegation that Union Pacific failed to clear vegetation from the railroad crossing.   (Filing No. 102-4 at pp. 2-4).   The remaining allegations concerned Union Pacific's failure to: install flashing lights and gates at the crossing; sound an audible warning; adequately mark the crossing; adequately warn of the approaching train; keep an adequate lookout; slow or decelerate in response to the hazard at the crossing; and maintain suitable warning and traffic signs.   (Filing No. 102-4 at pp. 2-4).

In January 2013, after several years of litigation, and shortly before the scheduled trial, Union Pacific settled the Oklahoma Action for a confidential amount that exceeded the coverage provided by the insurance policies with AHA and Colony.   (Filing No. 108-1 at pp. 4-41).   Prior to Union Pacific's settlement of the Oklahoma Action, Colony advised Union Pacific's counsel that it would neither object nor consent to the settlement because Colony did not know all of the settlement's terms and could not assess Union Pacific's liability exposure attributable to DBI due to Colony's limited access to Union Pacific's defense files.   (Filing No. 102-23 at pp. 2-3).

Union Pacific filed the present action asserting causes of action against DBI for contractual indemnity and/or contribution; against AHA and Colony seeking a declaration of rights and obligations under the insurance policies; and against both AHA and Colony for breach of contract, breach of fiduciary duty, breach of statutory duty, and bad faith failure to indemnify Union Pacific.   (Filing No. 1; Filing No. 125 at p. 5).   After consideration of the parties' cross-motions for partial summary judgment regarding the scope of coverage available to Union Pacific as an additional insured under the insurance policies with AHA and Colony, Chief Judge Laurie Smith Camp determined the 2005 Agreement and the insurance policies clearly provide that the defendants' liability is limited by the scope of the indemnity clause in the 2005 Agreement between Union Pacific and DBI.   (Filing No. 125 at p. 10).   Chief Judge

Smith Camp concluded the indemnity clause in the 2005 Agreement anticipates instances "where there will be a need for allocation of liability and loss between [Union Pacific] and DBI" and framed the parties' respective burdens of proof as follows:

> [Union Pacific] will have the burden of proving by a preponderance of the evidence any liability it incurred as a result of the 2006 collision that [Union Pacific] would not have incurred *but for* the acts or omissions of DBI, arising out of DBI's performance or nonperformance of the 2005 Agreement.   If [Union Pacific] meets that burden, AHA and Colony will have the burden of proving by a preponderance of the evidence any portion of such liability caused by [Union Pacific] itself; and AHA and Colony will not be responsible for that portion of such liability.

(Filing No. 125 at pp. 1-2).

Colony filed the instant motion seeking an order compelling Union Pacific to fully respond to interrogatories and produce documents it withheld as privileged attorney-client communications or as work-product.   (Filing No. 90).   Colony's interrogatories relate to Union Pacific's analysis, evaluation, and decision to settle the Oklahoma Action.   (Filing No. 91 at p. 6; Filing No. 92-6 at pp. 7-12).   Colony's document requests generally seek the investigative and defense files from the Oklahoma Action.   (Filing No. 91 at p. 6; Filing No. 92-7 at pp. 4-7, 46-48).   Union Pacific produced privilege logs for the claims file and the defense file, identifying 3,978 documents withheld on the bases of attorney-client privilege or as work product.   (Filing No. 92-9 at pp. 1-429).   Colony argues the discovery requests are relevant to determine which portion of the Oklahoma Action settlement was based on Union Pacific's assessment of its own liability exposure at trial for non-covered claims, and which portion of the settlement was based on Union Pacific's assessment of DBI's liability for the covered vegetation claim.   (Filing No. 132 at p. 3).

## DISCUSSION

"In [a] diversity case, [federal courts] apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).   The parties do not dispute that Colony requests disclosure of

discovery that is ordinarily protected by the attorney-client privilege. However, under Nebraska law, a party may waive the attorney-client privilege by placing communications between lawyer and client into issue. See *Nebraska v. Roeder*, 636 N.W.2d 870, 876 (Neb. 2001). The party asserting the attorney-client privilege impliedly waives it through his own affirmative conduct when: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.* "'Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege.'" *Id.* (quoting *League v. Vanice*, 374 N.W.2d 849, 856 (Neb. 1985)).

Colony also seeks production of documents that Union Pacific withheld as work-product. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). However, such materials, if "otherwise discoverable under Rule 26(b)(1)," may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Nevertheless, "[t]he work product privilege is not absolute and may be waived." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731-32 (8th Cir. 2002). "[T]he privilege should be 'applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis.'" *Id.* (quoting *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)). "The privilege is designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's interest in revealing all true and material facts relevant to the resolution of a dispute." *Pamida*, 281 F.3d at 731-32. "When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy

adversary system, the privilege should give way." *Id.* at 732 (quoting *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982)).

Colony argues Union Pacific waived the attorney-client and work product privileges by designating its counsel from the Oklahoma Action as potential expert witnesses and by stating Union Pacific decided to settle the case in reliance on its counsels' advice that Union Pacific faced liability at trial primarily because of the one allegation of negligence relating to DBI's vegetation work.  (Filing No. 132 at p. 9).  In its answers to interrogatories, Union Pacific identifies eleven witnesses with knowledge of the evidence at the time of settlement regarding the claims raised in the Oklahoma Action.  (Filing No. 92-6 at pp. 4-7).  All of the witnesses are attorneys, including Union Pacific's litigation manager and its defense counsel.  Union Pacific further answers it "took into account the opinions of its local defense counsel . . . in its decision to settle the underlying claims," and it "may rely" on the expert opinion of its local defense counsel in the Oklahoma Action regarding his assessment or evaluation of Union Pacific's potential exposure or liability in the underlying action.  (Filing No. 96-2 at pp. 12-13).  Additionally, Union Pacific states in its initial disclosures that its lead trial counsel and litigation manager from the Oklahoma Action may offer several opinions based, in part, on their personal knowledge of the facts and circumstances of the Oklahoma Action and the settlement.  Union Pacific's trial counsel "may" testify to his opinion that it was more likely than not a jury in the Oklahoma Action would have rendered a verdict against Union Pacific because "a proximate cause" of the accident was due to DBI's acts or omissions in failing to cut the vegetation at the scene.  (Filing No. 92-8 at pp. 3-4).  Union Pacific's litigation manager is prepared to testify, "It was more likely than not that the jury [in the Oklahoma Action] would have rendered a verdict in favor of plaintiffs in excess of $25 million dollars based in part upon the uncontroverted physical evidence that DBI failed to cut the vegetation at the scene in accordance with Union Pacific's written standards."  (Filing No. 92-8 at p. 6).

It is clear to the court from Union Pacific's initial disclosures and answers to interrogatories that Union Pacific intends to rely on the opinions, knowledge, and advice of its trial counsel to establish why Union Pacific settled the underlying action, directly placing those

5

communications at issue in this action. Union Pacific appears prepared to disclose the subjective opinions of its trial counsel regarding Union Pacific's liability in the Oklahoma Action related to DBI's vegetation work, while simultaneously seeking to maintain privilege as to other opinions and evaluations, including Union Pacific's perceived liability for any of the other ten allegations of negligence raised in the Oklahoma Action. Nevertheless, the court is not inclined to compel Union Pacific to disclose privileged communications or documents at this time because Union Pacific designated its counsel as potential witnesses who *may* offer the above opinions. (Filing No. 127 at pp. 3-4). The parties can meet their respective burdens of proof with other types of non-privileged evidence, such as the pleadings, court rulings, discovery, and depositions from the Oklahoma Action, or an outside expert evaluation. The fact that Union Pacific *may* want to offer opinions of its trial counsel does not constitute waiver at this time.

However, if Union Pacific continues to invoke privilege in response to Colony's discovery requests, Union Pacific will be barred from introducing any evidence of how its attorneys evaluated the underlying claims at the time of settlement or how its attorneys perceived Union Pacific's liability at the time of the settlement. See, e.g., *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 874 (D. Minn. 2014) (concluding that the insured could not introduce evidence of how the insured or its attorneys evaluated the claims at the time of settlement due to the insured's repeated invocation of the attorney-client privilege and work-product doctrine to prevent the insurers from inquiring into the insured or its counsels' subjective evaluations of the settlement). "[P]rivilege[s] cannot at once be used as a shield and a sword." *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); see also, *Seneca Ins. Co., Inc. v. Western Claims, Inc.*, 774 F.3d 1272 (10th Cir. 2014) (concluding an insurer waived attorney-client privilege by affirmatively putting at issue its attorney's advice in stating it settled on advice of counsel; allowing the insurer to rely on advice of counsel to establish the reasonableness of the settlement while excluding the contents of that advice would violate the principle that attorney-client communications could not be used both as a sword and a shield).

Union Pacific will not be permitted to selectively disclose opinions and evaluations of its trial counsel without waiving privilege as to all of its counsels' opinions and evaluations of the underlying claims.  See *Bilzerian*, 926 F.2d at 1292 ("A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").  The court will leave the determination to Union Pacific whether to disclose the requested information and documents, or be barred from introducing testimony and evidence from Union Pacific's counsel concerning the bases of Union Pacific's liability and decision to settle in the underlying case.   Accordingly,

**IT IS ORDERED:**   Defendant Colony National Insurance Company's Motion to Compel (Filing No. 90) is denied.

**DATED:   September 9, 2016.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**