# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>COLONY NATIONAL INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 8:13CV84<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the parties' motions in limine submitted pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In Plaintiff's Motion, ECF No. 194, Union Pacific Railroad Company (UP) seeks to exclude testimony of Defendant's expert witness, Sharon Van Dyck. In Defendant's Motion, ECF No. 197, Colony National Insurance Company (Colony) seeks to exclude testimony of UP's expert witness, Joseph R. Farris. For the reasons discussed below, the Motions will be denied, without prejudice to the parties raising their respective objections at the time of trial.

## STANDARD OF REVIEW

Federal Rule of Evidence Rule 702 allows for the admission of expert opinions. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In light of *Daubert* and *Kumho Tire*,[1] this Court must screen proffered expert testimony for relevance and reliability. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008). A reliable opinion must be based on scientific methodology rather than on subjective belief or unsupported speculation. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). In assessing reliability, the Court should consider factors including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. *Bland*, 538 F.3d at 896. This list of factors is not exclusive, and this Court is allowed "great flexibility" in its analysis. *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999).

The expert's information or opinion must also "assist" the trier of fact in understanding or determining a fact in issue. Fed. R. Evid. 702(a). "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591.

Throughout the Court's assessment of the admissibility of an expert's opinion, *Daubert* makes clear that the Court "should also be mindful of other applicable rules," such as Fed. R. Evid. 403,[2] which states:

---

[1] The Supreme Court has held that *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 141.

[2] *Daubert*, 509 U.S. at 595; *see also United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 595):

> *Daubert* makes it clear that when assessing the admissibility of proffered scientific expert testimony under Rule 702, the trial court must also take into account the interplay of other

2

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

## DISCUSSION

This case is set for a trial to the bench, commencing on March 20, 2018. At issue is whether Colony, the excess insurer for a contractor (DBI) hired by UP to cut vegetation at a railroad crossing, must indemnify UP for part of UP's $6.5 million settlement of an Oklahoma wrongful death action (Underlying Action).

"To prove allocation, parties can present testimony from attorneys involved in the underlying lawsuits, evidence from those lawsuits, expert testimony evaluating the lawsuits, a review of the underlying transcripts, or other admissible evidence." *UnitedHealth Group, Inc. v. Executive Risk Specialty Ins.*, 870 F.3d 856, 863 (8th Cir. 2017) (citing *Nodaway Valley Bank v. Cont'l Cas. Co.*, 916 F.2d 1362, 1365–66 (8th Cir. 1990)). "The allocation inquiry examines how a reasonable party in [the insured's] position would have valued the covered and non-covered claims. In evaluating the claims, we look to what the parties knew at the time of settlement." *Id.* "Allocation require[s] either contemporaneous evidence of valuation or expert testimony on relative value to provide a reasonable foundation for a [fact-finder's] decision." *Id.* at 865.

### I. Colony's Expert, Sharon Van Dyck

Colony proposes to offer expert testimony from Sharon Van Dyck, a lawyer with extensive experience in litigation involving railroad crossing accidents. UP objects to Van Dyck's proposed testimony, noting that she will not offer any opinion as to the

---

relevant rules of evidence, such as Rule 403: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.

reasonable allocation of the settlement between the Underlying Action's covered claims, related to vegetation, and non-covered claims, such as those related to the absence of crossing gates and lights. UP also notes that Van Dyck has no experience with Oklahoma law.

Colony contends Van Dyck can offer opinions that will help the Court reach its own conclusions as to allocation of the settlement between covered and non-covered claims. Colony states that such opinions include:

> • The factors that determine whether a railroad crossing plaintiff can pursue a claim that a railroad was negligent because the passive warning devices at the subject crossing were inadequate and should have been upgraded to flashing light signals and automatic gates or whether that claim is preempted by federal law;
>
> • The evidence from the underlying action that indicates that the primary theory of liability plaintiffs were pursuing against Union Pacific was their lights and gates claim, not the vegetation claim;
>
> • The type of evidence that is presented to a jury in a lights and gates case about a railroad's corporate policies and lobbying activities essentially putting the railroad itself on trial;
>
> • How a jury is likely to react to such evidence and how such evidence has resulted in substantial punitive damages awards against railroads, including Union Pacific, in other cases;
>
> • Why a lights and gates claim is more likely to result in an award of punitive damages than a vegetation claim;
>
> • Why a lights and gates claim increases the settlement value of a case;
>
> • The strength of Union Pacific's defenses to the vegetation claim; and
>
> • Why it is unlikely that experienced railroad crossing plaintiffs' counsel like Bob Pottroff and Tom Jones with a viable lights and gates claim that survived Union Pacific's multiple attempts to have it dismissed on preemption grounds would present evidence at trial emphasizing a companion vegetation claim instead as Union Pacific contends.

Def.'s Brief, ECF No. 210, Page ID 6732.

"[R]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988). *See also Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards"); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99–100 (1st Cir. 1997) ("At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony [as to principles of law], and we now join them as to the general rule."); *In re Initial Public Offering Sec. Litigation,* 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001) ("[E]very circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

If Van Dyck offers testimony as to what the law requires, allows, or prohibits, her opinions will be subject to objection, as exceeding the province of an expert witness. If, however, Van Dyck offers testimony as to how reasonable lawyers with expertise in railroad crossing litigation would evaluate claims, defenses, evidence, trial strategy, or settlement, relevant to the facts of this case, then her opinions may assist the Court in its fact-finding mission. It is recognized that her understanding of legal principles may provide a basis for such opinions.

Accordingly, UP's Motion to Exclude Van Dyck's testimony will be denied, without prejudice to UP raising objections at trial.

## II.  UP's Expert, Joseph R. Farris

UP proposes to offer testimony from Joseph R. Farris, an attorney with extensive experience in civil litigation in Oklahoma. Colony objects to Farris's proposed

5

testimony, noting that Farris has no experience or expertise in railroad crossing litigation, but specializes in legal malpractice and divorce. More specifically, Colony objects to Farris's opinion that UP would have faced substantial liability in the Underlying Action based on DBI's alleged negligence in failing to clear vegetation from the crossing area, and that the Oklahoma Supreme Court likely would have reversed the Oklahoma trial court's ruling that the plaintiffs' lights-and-gates claims were not preempted by federal law.

UP argues that Farris's extensive experience in malpractice and transportation litigation, including experience with Oklahoma juries, qualifies him to offer opinions about allocation of liability among potential tortfeasors in settled lawsuits. UP also argues that Farris is knowledgeable about Oklahoma and Tenth Circuit law on the defense of federal preemption, and he can offer valuable opinions about whether UP had a valid preemption defense to the plaintiffs' lights-and-gates claim and whether the trial court's rulings on UP's preemption defense would have been reversed on appeal to the Oklahoma Supreme Court.

If Farris offers testimony as to what the law requires, allows, or prohibits; or testimony about what a court likely would decide on a question of law; his opinions will be subject to objection, as exceeding the province of an expert witness. If, however, he offers testimony as to how reasonable lawyers with expertise in Oklahoma tort litigation would evaluate claims, defenses, evidence, trial strategy, and settlement, relevant to the facts of this case, then his opinions may assist the Court in its fact-finding mission. His lack of experience in railroad crossing litigation likely will affect the weight given to his opinions, but will not preclude him from being called by UP as an expert witness.

Because the Court will be the trier of fact in this case, it is unnecessary for the Court to exercise a strict pretrial gate-keeping function, under *Daubert.*

The Court recognizes that Union Pacific filed a Motion for Leave to File Surreply, ECF No. 229, in Opposition to Colony's Motion in Limine, ECF No. 197. The motion asks for an opportunity to respond to new arguments raised by Colony in its reply brief. As the Court did not rely on those new arguments in reaching its conclusion, the surreply is unnecessary and the motion will be denied.

Accordingly,

IT IS ORDERED:

1. Plaintiff Union Pacific Railroad Company's Motion in Limine (Daubert) to Exclude Expert Sharon Van Dyck, ECF No. 194, is denied, without prejudice to objections at trial;

2. Defendant Colony National Insurance Company's Motion to Exclude Expert Report, Opinions and Testimony of Joseph R. Farris, Esquire, ECF No. 197, is denied, without prejudice to objections at trial; and

3. Plaintiff Union Pacific Railroad Company's Motion for Leave to File Surreply, ECF No. 229, is denied.

Dated this 23rd day of February, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge